Case: 2:22-mj-00795-CMV Doc #: 1 Filed: 12/15/22 Page: 1 of 20 PAGEID #: 1
Case 2:23-cr-00079-MSD-LRL *SEALED* Document 14-1 Filed 11/24/5 Page 1 of 20 PageID# 170
AUSA Pakiz

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The Cellular Telephone Assigned Call Number (614) 738-8587

Case No. 2:22-mj-795

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the  Southern  District of  Ohio , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC § 841 | Distribute, Manufacture, Possess, or Dispense a Controlled Substance |
| Title 21 USC § 846 | Conspiracy to Distribute, Manufacture, Possess, or Dispense a Controlled Substance |

The application is based on these facts:
See affidavit in support of search warrant. To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by ATF. See 18 U.S.C. §§ 3122(b), 3123(b).

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Teresa J. Petit
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/15/2022

Chelsey M. Vascura
United States Magistrate Judge
*Judge's signature*

City and state: Columbus, OH

United States Magistrate Judge Chelsey M. Vascura
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (614) 738-8587 | **UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Teresa J. Petit, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, deposes and states:

### INTRODUCTION AND AGENT BACKGROUND

1. I submit this Affidavit in support of an Application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (614) 738-8587, with listed subscriber as "Donald Littlefield" but utilized by Charles WOODEN (hereafter referred to as the "TARGET CELL PHONE"), whose service provider is VERIZON, a wireless telephone service provider headquartered at 180 Washington Valley Rd, Bedminster, New Jersey, 07921. The Affiant is also seeking historical subscriber, toll and tower information for the TARGET CELL PHONE covering the entire investigative period. The TARGET CELL PHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

1

3. I am a Special Agent employed since May 2014 by the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in the Columbus, Ohio Field Office. Beginning in March 2005, I was a Parole Officer with the Ohio Adult Parole Authority (APA), where I served as a Task Force Officer (TFO) with the ATF from early 2009 until May of 2014. During my career, I have investigated violations of Federal and State laws to include firearms and illegal narcotics violations. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision location and cell-site activation information, as well as reviewing call detail information.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the ATF and other law enforcement agencies; and from my review of records and reports relating to the investigation. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this Affidavit, there is probable cause to believe that Charles WOODEN, Brittny MCDOUGALD, Carl CAMPBELL, ▮▮▮▮ ▮▮▮▮, Gregory FOUNTAIN, Alexis ORTEGA (hereafter collectively referred to as the "TARGET SUBJECTS"), and others have committed violations of the following federal laws: Title 21, United States Code, Section 841(a)(1), that is, to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance, as well as Title 21 United States Code, Section 846, that is, two or more persons conspiring to commit any offense defined in the subchapter, including Section 841. (Both of the above offenses are collectively referred to throughout as the "SUBJECT OFFENSES.") There is also probable cause to believe that the

2

location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of other individuals who are engaged in the commission of the SUBJECT OFFENSES.

6. This court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROABLE CAUSE

7. On or about June 6, 2022, officers from the Columbus Division of Police (CPD) were dispatched to the area of 5406 Wrigley Street, Canal Winchester, OH. Upon arrival officers located an unconscious and unresponsive female sitting in the driver's seat of a vehicle, located inside the attached garage at 5406 Wrigley Street. Officers conducted a sweep of the structure for any other persons in need of medical aid, and while doing so they observed a "kilo" press, a large bag containing a white powder, a money counter, firearms, and other items indicative of bulk narcotic distribution.

8. The unconscious female was slumped over the wheel of a Jeep Wrangler Unlimited, bearing Ohio license plate BZJEEP. She was later identified as Brittny MCDOUGALD. Medics with the Columbus Division of Fire (CFD) responded and pronounced MCDOUGALD deceased. The Franklin County Coroner's Office also responded, and the preliminary investigation indicated that MCDOUGALD passed away from a drug overdose, however the official report is forthcoming.

9. Continuing on or about June 6, 2022, the initial responding officers from CPD secured the residence and contacted a CPD Narcotics Detective who later received a search

3

warrant for the residence. The execution of the search warrant yielded approximately 78 combined kilograms of cocaine and fentanyl, approximately 25 firearms (several of which had been reported stolen), numerous boxes of ammunition, approximately $155,000 U.S. currency, ledgers, documents of indicia, two (2) laptop computers, FedEx shipping labels and boxes, twenty-nine (29) cellular telephones, money counters, kilogram presses, and a large box containing marijuana. The Jeep was also towed from the residence to the CPD impound lot where it was secured pending a separate search warrant. As a result of the recovery, investigators began an investigation into the drug trafficking organization involving the TARGET SUBJECTS.

10. Upon executing a search warrant on the Jeep, investigators recovered two (2) additional cellular telephones, documents of indicia, as well as photo identification cards for Brittny MCDOUGALD, Brittny Stewart, and Melissa Abrego. Investigators determined that Stewart was Brittny MCDOUGALD'S maiden name and determined that Melissa Abrego is an alias utilized by Brittny MCDOUGALD. The photo identification card for Melissa Abrego contained a photograph of who investigators know to be Brittny MCDOUGALD.

11. Investigators reviewed the documents recovered from both the residence located at 5406 Wrigley Street and the vehicle and observed several other names. Investigators observed the name "G. FOUNTAIN" as the recipient listed on numerous FedEx packages in the residence, as well as Melissa Abrego. Additionally, the name "Simone Silas," and Alexis ORTEGA were also documented on several ledgers recovered in the residence.

12. Rental records were obtained from American Homes 4 Rent that indicated the residence of 5406 Wrigley Street, Canal Winchester, OH 43110, was rented to "Simone Silas" initially on May 8, 2018, with an annual lease renewal thereafter, through May 8, 2023.

4

American Homes 4 Rent also provided the photo identification provided by "Simone Silas" at the time of the lease application. The photo identification card provided by "Simone Silas," contained a photograph of who investigators know to be Brittny MCDOUGALD. The photo identification card was a Texas Driver License that when checked through the Texas database was not a valid identification number issued in the state of Texas. Investigators determined that "Simone Silas" was another alias utilized by Brittny MCDOUGALD.

13. Investigators obtained forensic copies of each of the cellular telephone(s) recovered from MCDOUGALD's Jeep Wrangler. While reviewing the forensic copy of the Apple iPhone, described by MCDOUGALD's family as her personal cellular telephone, investigators identified numerous, lengthy conversations utilizing the WhatsApp platform, between MCDOUGALD and others. Of investigative significance is the WhatsApp conversation between profile name "B" (MCDOUGALD) and "9zeros" with the associated telephone number of (614) 584-7475. Utilizing law enforcement databases, investigators were able to determine that the telephone number associated to "9zeros" belonged to WOODEN. The conversations between MCDOUGALD and WOODEN date back to approximately 2018. WOODEN utilized many different telephone numbers but always the WhatsApp profile name of "9zeros." Over the course of the approximate four (4) years of conversation, WOODEN directed MCDOUGALD where to ship packages, discussed recruiting others to ship and receive packages, talked about cleaning up around the stash house, discussed obtaining supplies, exchanged photographs and videos of bulk currency and suspected narcotics, planned the payment of the bills at the various stash locations, and so forth. Specifically, on May 31, 2022, WOODEN sent MCDOUGALD a message that stated, "I will put NC by the couch but you will need to put them together (6piece)." When investigators executed the search warrant on June 6, 2022 at the residence of

5

5406 Wrigley Street, there were six (6) kilograms of cocaine located next to the couch, and FedEx labels had been created for an address in North Carolina.

14. On or about August 10, 2022, investigators obtained a pen register/E-911 ping order on WOODEN's aforementioned telephone number. Analysis of the historical call detail records indicated that WOODEN had never directly contacted McDougald until June 6, 2022, the date McDougald was found deceased. All other communication between McDougald and WOODEN appeared to occur on WhatsApp. The records show that WOODEN attempted four (4) outgoing telephone calls to McDougald exclusively on June 6, 2022.

15. A subpoena was sent to FedEx Express and FedEx Ground related to the information obtained off the labels located at Wrigley Street. Review of those records indicate hundreds of packages have been sent from the accounts identified. The records show that packages have been sent both to and from California and Ohio as well as but not limited to Texas, Florida, and North Carolina. The names on the labels are variants of the more than eight (8) aliases utilized by the TARGET SUBJECTS. Most commonly the packages were shipped to a Fed Ex Office Print and Ship Center and marked to be held at the location to be picked up by an individual.

16. On or about January 20, 2022, WOODEN completed an application for an Ohio Driver's License. In column A, the application contains handwritten personal identifying information completed by WOODEN. This includes a block for a telephone number where he provided the number of (614) 584-7475, and a block for an address where he provided the address of 2463 Century Drive, Columbus, OH 43211. An Ohio Driver's License was subsequently issued to WOODEN that day.

17. Investigators are aware that in 2008, WOODEN was charged for Possession and

6

Trafficking in Drugs (F-1), with a Major Drug Offender (MDO) specification. On or about November 8, 2022, in the Franklin County Common Pleas court, WOODEN entered a plea to a lesser included offense of Trafficking in Drugs (F-3) and Possession of Drugs (F-3), without the MDO specification. The court accepted his plea and sentenced WOODEN to five (5) years of community control with a mandatory fine of $10,000.

18. Investigators received records from the Wright-Patt Credit Union that indicated on July 3, 2022, WOODEN completed a loan application for the purchase of a 2022 GMC Sierra 1500 Limited Edition. WOODEN provided the telephone number of (614) 364-1233 on the loan application. WOODEN was approved for the loan amount of $49,172.00 with a $20,000 down payment. The vehicle was later registered to WOODEN through the Ohio Bureau of Motor Vehicles, with license plate JWD6244, at the residence of 2463 Century Drive, Columbus, OH 43211. The loan application also indicated that WOODEN has been an "account manager" at Strongbridge Global LLC located at 620 Taylor Station Drive, Gahanna, OH for five (5) years and six (6) months. According to the Ohio Secretary of State business filings, WOODEN originally filed the Articles of Organization for said business on February 19, 2022.

19. Between the dates of August 16 through September 28, 2022, investigators conducted physical surveillance and observed WOODEN around central Ohio. WOODEN has been observed on a few occasions at Strongbridge Global LLC but was most often observed parked in the driveway at and coming and going from the residence of 27 Langtree Drive, Pickerington, OH. The residence on Langtree appears to be WOODEN's primary residence in contrast to the residence listed on his Ohio Driver's License application. Specifically, on August 23, 2022, investigators followed WOODEN to the FedEx Office Print and Ship Center located at 6266 E. Broad Street, Columbus, OH from said address. WOODEN sat in his vehicle

7

approximately 45 minutes before he entered the retail establishment. You affiant knows through training, education, and experience that individuals engaged in criminal acts will often sit for prolonged periods of time attempting to wait out any surveillance units and/or conducting their own counter surveillance.

20. Investigators previously received a state pen register/E-911 ping search warrant for the telephone number of (614) 364-1233. Through technical surveillance, investigators learned that WOODEN has traveled to Cleveland, OH, multiple times throughout September 2022. The technical surveillance placed him around several FedEx Office Print and Ship Centers. Prior conversations between MCDOUGALD and WOODEN indicate that WOODEN travels between his primary residence to the stash house and other locations for the purpose of transporting narcotics. For example, on May 31, 2022, WOODEN sent a message to MCDOUGALD stating, "Ok. Everything will be there at 10:30. I will put NC by the couch but you will need to put them together (6piece)." He later sent a message telling her "Everything is there." Further, on June 1, 2022, WOODEN sent MCDOUGALD "We need to schedule a Eye 2 Eye tomorrow. A lot of new stuff to go over." The two exchange several more messages before deciding to meet in person on June 3, 2022. Although WOODEN utilizes numerous telephone numbers it appears from the records obtained through legal process and data obtained from the state pen register/E-911 order, as well as physical surveillance of WOODEN, that the telephone number (614) 364-1233, continues to be located in and around the area of WOODEN.

21. On September 2, 2022, investigators conducted a trash pull with the assistance of the local refuse company at 27 Langtree Drive, Pickerington, Ohio, the known residence for WOODEN. Investigators located an identification card bearing the name of "Donald Littlefield" with a photograph of WOODEN. The identification card was issued from the AimHi Family

8

Firearms Center and was issued on May 2, 2017. Investigators spoke with representatives from AimHi Family Firearms Center and learned, to obtain a Range Certification card, the patron must present another photo identification card. The number that appears above the barcode on the Range Certification card is the corresponding number from the identification provided by the patron. Investigators compared the number series of the I.D. Checking Guide and determined the number series is most like identifications issued by the state of Arizona. With this information, investigators ran a query in NCIC and established that WOODEN obtained an Arizona driver license on October 10, 2013, in the alias name of "Donald Littlefield." After obtaining this information, investigators then reviewed the Fed Ex shipping records and identified approximately 80 times where packages were shipped to or from "D. Littlefield." The date range for Littlefield's packages is from July 2018 through April 2020. Additionally, there were seven (7) packages between January 2020 and January 2022 that were shipped to Arizona.

22. Returning to the WhatsApp conversations between WOODEN and MCDOUGALD, on February 25, 2022, he asked her if she was available to look into a "track." Investigators have learned that "track" is a reference to a FedEx tracking number. MCDOUGALD agreed and asked for the tracking number information. WOODEN sent her an image of a FedEx receipt containing the tracking information. WOODEN expressed concern for the package stating, "I used my actual face on this." They continued to exchange messages regarding the package, and he asked her to call FedEx and inquire about the status of the package, he also provided the name for the receiver as ▮▮▮▮▮▮▮▮▮▮" and the name of the sender as "Donald Littlefield." The records obtained from FedEx Express indicated that other packages had previously been shipped to Arizona for ▮▮▮▮▮▮▮."

23. On or about October 6, 2022, investigators obtained a Federal search warrant for a

9

pen register/trap and trace on the telephone number (614) 364-1233. Through the utilization of the electronic surveillance data generated it aided investigators with physical surveillance. During that physical surveillance WOODEN was observed circling through parking lots, weaving through residential neighborhoods that resulted in him doubling back on his direction of travel, sitting in his vehicle for extended periods of time prior to exiting the vehicle, and varying his speed when traveling on the highway. Your affiant knows through training and experience that those behaviors are indicative of counter surveillance maneuvers. Those maneuvers as well as others not listed are utilized to detect any type of vehicle following and/or to lose those following surveillance vehicles.

24. Review of the records obtained from the previous pen register on the telephone number (614) 364-1233 indicated that between September 9 through October 1, 2022, the telephone number (614) 364-1233 sent or received a data or text message approximately fourteen (14) times to the TARGET CELL PHONE. A query of a law enforcement database indicated that the telephone number is associated to "Donald Littlefield," with the same address that appeared in the Arizona Bureau of Motor Vehicle records on the fake identification obtained by WOODEN. Your affiant knows through training and experience that individuals engaged in illegal narcotic trafficking often utilize multiple cellular telephones.

25. On or about October 14, 2022, your affiant received a Federal tracking warrant to affix a GPS tracking device to WOODEN's vehicle. Through the electronic data generated from both the GPS tracking device and the pen register/trap and trace on telephone number (614) 364-1233, investigators learned that WOODEN has made several trips to Cleveland, OH and Pittsburgh, PA.

26. On or about November 10, 2022, investigators conducted physical surveillance on WOODEN as he traveled to several locations in Cleveland, OH. Notably, WOODEN entered a Fed Ex Print and Ship Center located in Willoughby, OH. Investigators spoke with the store manager and reviewed the camera related to WOODEN's activities in the store. WOODEN entered the premises speaking on a cellular telephone. He entered the store holding only what appeared to be a portfolio/notebook and walked into the self-service area of the store. WOODEN did not conduct any business in the store before returning to his vehicle and leaving the parking lot.

27. Further review of the data generated from the GPS tracker affixed to WOODEN's vehicle and the location data generated from the pen register/trap and trace on telephone number (614) 364-1233 indicated several locations in Cleveland, OH, that WOODEN has visited on a repeated basis. Investigators have identified thirteen (13) properties located in the greater Cleveland, OH area that was all purchased on or about October 27, 2022. The properties were purchased utilizing the names of CCMW Investments LLC, DAKM Holdings LLC, and WFAM Investments LLC. The location data generated from both the vehicle tracker and the Federal pen register on WOODEN's telephone number (614) 364-1233 place him at different times on varying days at the locations owned by each of the three aforementioned LLC's.

28. Through the authorization of this Federal search warrant of the TARGET CELL PHONE, the data will continue to aid in the identification of locations known and unknown that are involved in the illegal narcotic trafficking, as well as locations where the storage, distribution, and gatherings related to the actions of the illegal narcotics trafficking. In addition, the call detail records obtained from the TARGET CELL PHONE will aid in identifying other individuals known and unknown engaged or involved in the illegal narcotic trafficking.

29. Your Affiant knows through training, experience, and conversations with other law enforcement officers that individuals engaged in a drug conspiracy will use their telephone to communicate with each other. In addition, cellular telephones are commonly in the physical possession of owners which would yield information as to where the conspirators may be meeting, acquiring, transferring, or storing the narcotics. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## E-911 PHASE II DATA AND CELL SITE DATA

30. In my training and experience, I have learned that VERIZON is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector record. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., 120-degree face of the tower) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

31. Based on my training and experience, I know that VERIZON can collect E-911

12

Phase II data about the location of the TARGET CELL PHONE, by initiating a signal to determine the location of the TARGET CELL PHONE on VERIZON's network or with such other reference points as may be reasonably available.

32. Based on my training and experience, I know that VERIZON can collect cell-site data about the TARGET CELL PHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as VERIZON typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

34. It is further requested, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize notice to be delayed for a period of thirty days after the termination of the monitoring period authorized by the warrant. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET CELL PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates,

13

and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

35. I further request that the Court direct VERIZON to disclose to the government any information described in Attachment B that is within the possession, custody, or control of VERIZON. I also request that the Court direct VERIZON to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with VERIZON's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on VERIZON's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate VERIZON for reasonable expenses incurred in furnishing such facilities or assistance.

36. It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELL PHONE outside of daytime hours.

37. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because

14

their premature disclosure may seriously jeopardize that investigation.

_____
Teresa J. Petit, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to before me this __15th__ day of December, 2022

_____
Magistrate Judge Chelsey M. Vascura
United States District Court
Southern District of Ohio

15

# ATTACHMENT A

## The Property to Be Searched

1. The cellular telephone assigned call number (614) 738-8587 with listed subscriber unknown but utilized by Donald Littlefield aka Charles WOODEN ("TARGET CELL PHONE"), whose wireless service provider is VERIZON, a company headquartered at 180 Washington Valley Rd., Bedminster, NJ, 07921.

2. Records and information associated with the TARGET CELL PHONE that is within the possession, custody, or control of VERIZON, including information about the location of the TARGET CELL PHONE if it is subsequently assigned a different call number.

16

## ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

All information about the location of the TARGET CELL PHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the TARGET CELL PHONE" includes all available Pen Register/Trap and Trace (PRTT) data, E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of VERIZON, VERIZON is required to disclose the Location Information to the government. In addition, VERIZON must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with VERIZON's services, including by initiating a signal to determine the location of the TARGET CELL PHONE on VERIZON's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate VERIZON for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

17

## II. Records and Other Information to Be Disclosed

In addition to the above, VERIZON is further required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period of January 2018 to date of the authorization of this document.

- A. The following information about the customers or subscribers of the Account:

    1. Names (including subscriber names, user names, and screen names);
    2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
    3. Local and long distance telephone connection records;
    4. Length of service (including start date) and types of service utilized;
    5. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
    6. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
    7. Means and source of payment for such service (including any credit card or bank account number) and billing records.

- B. All records and other information (not including the contents of communications) relating to the Account, including:

    1. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and
    2. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.

18

### III.     Additional Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21 U.S.C. §§ 841 and 846 involving Charles WOODEN, Brittny MCDOUGALD, Carl CAMPBELL, ████████, Gregory FOUNTAIN, and/or Alexis ORTEGA.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

19